The issues before this court are whether BIA erred in finding that petitioners were firmly resettled in France, ignoring the overwhelming evidence that France was neither a safe nor permanent haven, and whether IJA or BIA failed to properly assess petitioners' claim for asset withholding and removal under correct legal standards. Counsel, the agency relied on the fact that they had received French citizenship, were fluent in French, and had lived there for many years. Why isn't that substantial enough evidence to support the agency's legal conclusion of firm resettlement? That's correct, Your Honor, but that's the only first part of the test, and that's not in dispute that they are French citizens. However, they qualify for restricted residence exception. So the only persecution that they reported occurred in Strasbourg, and the agency found that they could resettle in a different part of France if that was an issue. What's your response to that? Yes, they are saying relocation could be a possibility. However, simple logic dictates that if these people, these assailants, were able to track the petitioners down all the way from Armenia to France, and that would be way easier for them to track them within the country. But if there's no evidence of any persecution other than in Strasbourg, where they were living, what supports that inference? Well, petitioners reported their harm four times, and in fact, one time she reported to the parliament member. And instead of getting protection, she faces retaliation. She gets fired. So such a big, I mean, we're talking about parliament. So are you accusing the European Parliament of being complicit with the persecutors? Well, I'm not accusing, but that's what the record says, and we should give appropriate weight to the credible testimony. The record also showed that they were not forthcoming with the French police as to all of the details regarding why the persecutors might be persecuting them. What do we do with that finding? That's correct. They might have concealed some of the information, but the question is whether they provided sufficient information for the police to start investigation. And how do we know? I mean, we know that they admitted that they were not totally forthcoming. I did not see French police reports in the record, which I wouldn't expect. So how do I evaluate that in terms of whether there's substantial evidence to support the agency's conclusion that they didn't fully cooperate? Your Honor, we have two police reports on the record which details what information they provided to the police. And they provided more than enough information, which is they... I thought one of the incidents, the lead petitioner basically told the police that the men had been demanding large sums of money from her, but that was not true. Is that right? Well, yes, in a sense, that was not true. But does it matter here if they are telling the police that these people have been following them for months? Well, it does matter, counsel, if they're not being forthcoming with the local authorities, it's going to inhibit the ability of the police to effectively investigate their case. So you're asking us essentially to overturn the agency's determination that there was acquiescence on the part of the French government when the record shows that they were not totally forthcoming with the French police as to the motivation of the persecutors. Your Honor, I think... How does substantial evidence compel the opposite conclusion? I think they are sufficiently forthcoming and they are indicating to the police that if we tell all the details, our life will be endangered. But what it matters, they provided the date, time, location and the motives of the perpetrators. That would be more than enough for the police to start investigation. But one of the motives was false. That's the problem I'm having with this case, that it's from your standpoint, it's not a clean record. I mean, I guess they never are. But you've got some significant factual hurdles to overcome that point in the direction of substantial evidence supports the agency's determination. Your Honor, even if she's not disclosing all the details, does it really matter in a sense that even if these are regular hooligans, isn't the police supposed to at least take minimum investigatory steps? Well, it depends on how much legitimate or truthful information they provided the police. And I'm struggling with trying to determine why the police investigation was not hampered by the fact that your clients were not totally forthcoming when they did report. Well, your Honor, Sun's report indicates that these people have been following his father and these people are connected to the Armenian government. So that gives a little bit of motive. How did the Sun know that? Because these perpetrators told the Sun that we are from the Armenian government. And in fact, the IJ relied on the credible testimony and found that these operatives were Armenian government agents. That's how she granted the withholding of removal. It is unclear why the judge did not give the same appropriate weight to the credible testimony when these people expressly admit being in collusion with the police. And doesn't your case rise and fall, though, on whether the French government acquiesced in the harm that your clients experienced? For CAD purposes, your Honor. However, we're talking about here about firm resettlement. My understanding, first of all, this government's role was discussed only within the framework of withholding of removal, which is legally incorrect because firm resettlement requires a different standard. Asylum requires a different standard. And withholding requires only this 50% more likely than not standard. And the IJ and BIA incorrectly applied that higher standard to firm resettlement and asylum. The way I read it, firm resettlement requires safety and security in a third country. However, no reasonable person could conclude that someone is safe in a country where she gets raped twice and the second rape is in front of her children after she seeks protection from the government four times. I understand that the police did respond to their inquiry and took down notes. They were just unable to actually protect them. But we do have cases saying that the government's inability to deal with perpetrators does not show that the government was unable or unwilling to protect them. That's correct, Your Honor. And also, there is another case, Lloyd J. R. v. Barr. It holds that some official responsiveness to complaints, although relevant, does not automatically equate to government's ability and willingness. In this case, first time she reports, the police calls her, follows up to say we're closing the case. Following up to close the case is not considered a multiple effort or investigation. Second time, the son reports. What do we do with the situation? I'm still hung up on how much information she supplied to the police. If the police got back to her and basically said, based on what you told us, we can't proceed any further because we have no more leads, that doesn't lead to the conclusion that they have acquiesced or have basically blown her off. It's just a reflection of the fact that we don't have enough to go any further on it. Well, Your Honor, in real life criminal investigations, it is very rarely that the police has all the information up front, right? But they still take the minimum measures. It's also not unusual for police to close out a case because they've exhausted what available leads were given to them and there's nothing else to investigate. That's for the first time. How about the third time when they report it, the police tells them, we're sick and tired of you. If you don't like it in here, go back to your Armenia. So that was one statement by one police officer, which is probably your best fact. But the other police took notes, followed up, and were unable to trace the person down. And the IJ found that the French government didn't cause some harm, was not unable or unwilling to control the assailants, wasn't able to follow up in this particular case. Why isn't that substantial evidence supporting the IJ's conclusion? Your Honor, IJ concludes that police made multiple efforts and investigated. Only calling to say that we are closing the case is not considered a multiple effort. Well, they took notes and investigated. It wasn't like we were unresponsive, right? I mean, a lot of times the police can't, as we've said in our cases, the police can't solve the crime. As Judge Tolman points out, it's hard to solve the crime when the victims are giving you false information. But that was the IJ's finding, and it's certainly supported by evidence in the record. Well, what I think the IJ mostly relied on, the fact that we're talking about France, which is a more or less safe country. That could be true for 99 percent of population. But there remains this one percent, like the petitioners, that falls into cracks. And she didn't report. The fact is that she reports to the government four times, yet she gets whipped after reporting the fourth time. The IJ also found that, did not find that the Armenian government cooperated with the French government. And what was the best evidence that they were cooperating? Is it the declaration of your clients, or is there anything else in the record? Besides the credible testimony, also the fact that she gets harmed and keeps getting attacked after she seeks and pleads for help from the government. Why does that suggest that the two governments are working together? I mean, look, the facts for your clients are tragic. I mean, no one's going to dispute that it's not good to have repeated attacks, and maybe they are politically motivated. But it seems like our question turns on whether the French government acquiesced or whether the French government was unwilling or unable. And when you're dealing with substantial evidence, we don't get to re-weigh the evidence and say, oh, we wish that the French government would have done it better. Your Honor, first of all, the key question here is that this person is not a regular asylum applicant. This is a high-profile political target. Let's assume all that's true. You still have to comply with the law on this, though. Yes, and my understanding is this is not only substantial evidence. This is also a legal error here by applying the – yes, the IJ concluded a legal error when they incorrectly – although BI agreed with us, the IJ should have analyzed the asylum claim, but they incorrectly found that remand is unnecessary because the government would be able and willing to protect. But this finding was made only within the framework of withholding of removal relief, which requires 50 percent of chance, whereas asylum requires one in ten chance that a person will be persecuted. Now, this was a legal error by the BIA to apply the higher standard of withholding to the finding of asylum. In this case, remand is at least appropriate so that they can analyze asylum. And so what language in the BIA's opinion are you relying on for that statement? That they have imposed the wrong standard. Can you point me to the language in the BIA decision? It should be page six of the administrator record. It says, we agree with the respondent that there is nothing in the record indicating that a firm resettlement bar applies to preclude their applications for asylum from France. However, remand is unnecessary because we affirm the immigration judge's determination that responses did not demonstrate that the French government was or would be unable or unwilling to protect them. But that finding of unnecessary remand is not in the BIA decision. Unwillingness and unableness... Where is that on the page? Page six. Page six, on which paragraph? The very first paragraph and then the second one. And you're saying that's the withholding standard? Because that's the asylum standard as well. Where... So for withholding, the only difference between the withholding and the asylum is a reason versus a central reason. No, also the standards.  It requires... The percent. No. So BIA here is mostly adopting the IJ's findings and IJ analyzed the government's role within withholding framework, within withholding promotion. You're almost out of time, but we'll give you a minute for rebuttal. We'll hear from the government. Good morning. You may please the court. Jennifer Williams for the Attorney General. The pivotal question in this case is whether the evidence compels the conclusion that the French government is unable or unwilling to control the unknown assailants who attacked and threatened the petitioners while they were living in France. Under the facts of this case and the law, the answer is no, the evidence does not compel that conclusion. As such, petitioners are ineligible for asylum from Armenia as they firmly resettled in France, and they are also ineligible for asylum and withholding of removal as to France. Can you address the argument we just heard? Because I didn't... That was a little bit of a gloss that I hadn't picked up in the briefs and that there was actually legal error. I'd understood the case like you just presented it, that this is a substantial evidence question, but she's now arguing that there was legal error at page 6 of the administrative record. They applied a more likely than not rather than a 10% chance. This is the first time I've heard that argument as well, and I don't think it was presented in her opening brief, but whether it's the 10% chance versus the 50% goes to the likelihood of the harm happening, and that's not at issue in this case. This is only a question. So, I guess, is that the question? Because acquiescence is the CAT standard, acquiescence by the government. Unable or unwilling is the asylum standard. And withholding, yes. And withholding. Is there a difference between those two? No, there's not.  There's not. It's the same. The unable or unwilling standard is the same for asylum and withholding. And really, it's the same for CAT as well. But that has nothing to do with the likelihood of harm, and that's where the difference between the 10% and the 50% comes in. But that's not at issue in this case. So, as to that claim of lethal... Basically, your position is the BIA never actually got into whether the harm would reoccur. They just got into whether the French government was unable or unwilling. That's right. Yeah. Yes. Okay. Which is dispositive of both the firm resettlement question as to Armenia, as to the asylum claim from Armenia, and asylum and withholding, and CAT as to France? Well, you know, there are some troubling aspects to this case. I mean, this does sort of fit within a box that you would say, asylum might actually be warranted here, because... I mean, if you believe... But there was no adverse credibility finding for her, right? No, there wasn't. Oh, go ahead. Oh, no, I'm sorry. Well, I was just going to say, she does sort of report this and then gets fired, and she's being threatened. I guess the government's position is, yeah, all that's evidence. We're sympathetic to it, but you still have to show that the French government was unable or unwilling. Yes, that is our position. And, in fact, both the IJ and the board recognize the severity of the harm to which all the petitioners were subject. And made a finding that the harm rose to the level of past persecution. And assumed, at least, that there was a clear probability of future persecution. But it's still a requirement for both asylum and withholding and CAT that the petitioners, and they bear the burden to show that the government, in this case the French government, is unable or unwilling to control the private actors. So they have the quote from the police officers saying that they were tired of the Armenian who lost her mind because of her husband, and why doesn't she get out of the country? What do we do with that? That was, as we recognize in our brief, that was an unfortunate statement. But it was made by one police officer, and balanced against that are the actions that are present in the rest of the record, where every time she reported, or her son reported, in one instance, an instance of harm, the police made a record. In some cases, we have evidence that they did investigate, although they weren't able to find the perpetrators. As to the second two incidents, which occurred, I believe, in July of 2021, the petitioners left France a month later. So there is no evidence, and I don't believe they followed up, or at least there's no evidence that they followed up with the police. So there's just simply a lack of evidence as to what happened after those two reports. But what is in the record is that the French police, every time, made a record. There are two police reports in the administrative record. And what's also clear from the administrative record is that every time they reported, they admitted that they did not tell the police what they believed the true motives for the attacks were. And so during the instance when that one officer made that unfortunate comment, apparently the lead petitioner told him that these assailants were after them because they owed money. And so it's still an unfortunate comment, but apparently they did not tell the police the real reason for the attacks, as they understood them. Does that matter? Well, the question is whether the police, whether the evidence in the record compels the conclusion that the police were unwilling or unable to control the perpetrators. But what is evidence of unwilling or unable? I mean, I guess if crime... I mean, because France, we don't deal with a lot of these cases coming out of France, but I assume... I mean, traditionally this comes up in a country where the government is so tied to a gang or just can't control a gang or something like that. Are there other examples where you could show, could you show, that the French government is unable or unwilling? Well, I think, and I don't have examples from France in particular, but there are a couple of cases from this court that involved... one was Italy, one was Germany. And we did find that they were unable or unwilling? So in one, in the Doe case, the court found that they were unwilling or unable, but it was because... and I believe Doe was Germany too, although I'm not certain. But in that case, the petitioner was able to identify his attackers to the police. And the police still did nothing. And apparently there was also substantial evidence in the record that the assaults were motivated by anti-homosexual bias. In this case, unlike in the Doe case, they both did not know the identity of their assailants and certainly weren't able to convey the information that they didn't know to the police. And they also, unlike in Doe where I guess there was evidence of anti-homosexual bias, in this case they didn't tell the police the real reasons for the attacks. They told them... It was because they owed money. And then there are two other cases... So that would suggest that the motive was extortion as opposed to political retribution. Is that it? That is one possible inference, yes. What is not in the record is any indication that they ever told the police what they believe the real reason for the attacks were. I guess that's why I'm trying... I don't know that it matters. The asylum claim isn't based on the police officer's understanding of the motive, it seems. The unable or unwilling is based on whether the police officers can protect against the harm. I don't know. I guess I've never thought about that. But it doesn't strike me that just because whether you said I was being extorted or whether you said I'm being politically attacked, that might go to the legal analysis when you come to the BIA or the IJ. But I don't know why that matters about the police. The police are either going to go after this or they're not going to go after this. Well, the claim is that the police were unable to catch the perpetrators. And presumably... Regardless of the purpose of the perpetration. It is reasonable to infer that if they had told the police that these were politically motivated and these were actually agents of the Armenian government attacking them because of their ties to Rubin, that they would have had more information with which to potentially find the perpetrators. So they would know to look for Armenian agents rather than just criminals. Yes. I believe they did say maybe that they thought the assailants were Armenian. But they certainly didn't say that they believed they were agents of the Armenian government. At least a reasonable inference. And again, the standard is here. The evidence has to compel the conclusion. So a reasonable inference is that if they had given the police more information about who they believed their attackers were, the police would have had that information and would have been better able to conduct an investigation and find the perpetrators. And at a minimum, the fact that they didn't means that the evidence doesn't compel the conclusion that they wanted to. It seems to me that it would make a difference if the police knew that there were, for want of a better term, national security implications behind the attack as opposed to simple criminal extortion attempts. That that would be relevant for the police to know how to investigate the crime. In the United States, it would probably trigger a referral to the FBI as opposed to simply handling it as a local extortion case. I mean, I think that's a reasonable inference. Again, the record doesn't... I'm not sure in response to the question that my brother proposed to you. I think it might make a difference to the police if they had known the truth in terms of how they responded to the investigation. I agree. And I think, again, given the standard here, given that they didn't report this information, the fact that the police were not able to catch the perpetrators doesn't compel the conclusion that they were legally unable or unwilling. But the result doesn't matter. That's not the test. You've protected me. The test is you're unable or unwilling. There are a whole series of cases where you're willing Well, I don't know. Maybe unable gets you there. Unable, does that mean that we do start looking at the results? I mean, if this had happened ten times, would we have to say, well, they're unable? The reason that I focus on the results is that that is a big part of the petitioner's argument for unable or unwilling. I'm trying to figure out where that fits into our case law. I think the court looks at the result, but it looks at it in the context of the other evidence in the record. So again, in Doe, where they weren't able to catch the perpetrators You can't be just positive. There has to be something else. Exactly. Because if you're out there working ten hours a day for three straight weeks on this and you're just like, well, we can't find them, that doesn't necessarily trigger the unwilling or unable. And I think that's what this case law this court's case law suggests that it's very fact specific. It matters in a case where the police were unable to catch the perpetrators. It matters what information they had, what efforts they made, whether they were hamstrung in their ability to be effective. I mean, I think the court looks at the effectiveness, but in light of all the other particular facts of the case. This is all evidence of corruption, that the police are corrupt and that we sometimes see cases where the police have a corrupt relationship with the gangs. But there's no indication of that here, right? Yes. A lot of the cases do involve countries where there is a lot of evidence of collusion between the government and the gangs. No, there's not. No other questions? Oh, I still have a minute and a half. If the court has nothing further, thank you very much. You have a minute left of argument for rebuttal. Your Honor, if we have a murder case where the victim is not able to identify the assailant at all, no information at all, does that mean that the police is not supposed to investigate? So what I think in this case, it doesn't matter. We have that all the time, so then we look at forensic evidence and circumstantial evidence in order to solve the crime. That's correct. The police looks at some evidence. Yeah, I mean, the mere fact that the victim is not able to identify the attacker doesn't necessarily mean that the police are acquiescing in the crime. It may make it more difficult to find out who did it. But they still take the minimum standard measures to investigate. The record does not show that they took any steps to investigate. Well, Counselor, the problem I'm having with your argument is, and maybe it's because of the uniqueness of a case out of France, but we get, as you know, cases from other countries, like from Central or South America, where the police won't even investigate unless the victim's family pays them a bribe to conduct the investigation. Or you've got to pay money in order to influence the outcome. I mean, that's not what we have here. We have a situation where police actually responded and did something. The question is whether or not what they did was enough to conclude that the French government was somehow complicit with the Armenian government in turning a blind eye to what was going on. And the agency, looking at the record, concluded that they had not met that standard. Well, Your Honor, what I think, if the government were truly able, it would have prevented this horrific crime of second rape. If the government was willing... I'm not sure you can make that conclusion where the victim is not completely forthcoming as to the real reason behind the attack. I don't think that matters at this moment, Your Honor. I mean, the question is whether or not there's enough evidence to support the agency. Is there substantial evidence to support the agency's conclusion or whether the record compels the opposite conclusion? Isn't that what we're looking at here? The record compels the opposite. No reasonable fact finder would think that a person that gets harmed, gets attacked all the time reports to the government four times. And in fact, this court ruled in favor of asylum seekers after just one or two unrespond... Did they report it four... Sorry to drag it out, but did they report it four times? My understanding is there were four attacks, but there were only two reports. No, there were three police reports, and one time she reported to the parliament member. Got it. Okay. Thank you, Your Honor. The case of Milconian v. Bondi is submitted. And the next case is Alba Hathaway v. Santa Barbara Unified School District, which is submitted on the briefs. And we are adjourned for this session. All rise. This court, for this session, stands adjourned.
judges: TALLMAN, IKUTA, NELSON